KATTEN MUCHIN ROSENMAN LLP
Alan D. Croll (SBN 035893)
Jeremy J.F. Gray (SBN 150075)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Plaintiff ALLIEDBARTON
SECURITY SERVICES LLC

EMC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C 07 5204

| | |
|---|---|
| ALLIEDBARTON SECURITY SERVICES LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>NCLN 20, INC., a California corporation; STEPHEN JONES, an individual; SIHAYA JONES, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO:<br><br>COMPLAINT FOR<br>(1) BREACH OF CONTRACT;<br>(2) BREACH OF THE IMPLIED COVENANT;<br>(3) FRAUD;<br>(4) DECLARATORY RELIEF;<br>(5) UNJUST ENRICHMENT<br><br>DEMAND FOR JURY TRIAL |

**THE PARTIES**

1.     Plaintiff, AlliedBarton Security Services LLP, is a limited liability company organized and existing under the laws of the State of Delaware with its principle place of business in King of Prussia, Pennsylvania. AlliedBarton is in the business of, among other things, providing security services to a variety of customers.

2.     Defendant, NCLN 20, Inc. ("NCLN20"), is a corporation organized and existing under the laws of the State of California with its principle place of business

COMPLAINT

31397897v1

1  in Concord, California. Plaintiff is informed and believes, and on that basis alleges,
2  that NCLN20 is in the business of, among other things, providing security services to
3  its customers. NCLN20 is owned in its corporate capacity by individuals of a
4  protected class to a sufficient degree such that it is qualified to bid for, and be
5  potentially awarded, so-called "minority set aside" contracts with the United States
6  Federal Government.

7  3.  Defendant Stephen Jones is an individual residing in the State of
8  Florida. Jones is the President of NCLN20, and, on information and belief, possesses
9  an ownership interest in NCLN20.

10  4.  Defendant Sihaya Jones is an individual residing in the State of
11  California. Ms. Jones is Vice-President of NCLN20 and, on information and belief,
12  possesses an ownership interest in NCLN20.

## JURISDICTION AND VENUE

5.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiff and each of the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court also has supplemental jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1338(b) and 1367(a).

6.  This Court has personal jurisdiction over each of the Defendants in that the acts that are the subject of this action have been and are now being engaged in the State of California and in this judicial district.

7.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of events giving rise to the claims asserted herein occurred in this judicial district, Defendants are subject to personal jurisdiction in this judicial district, and the parties contractually chose this venue for litigation.

## GENERAL ALLEGATIONS

8.  In the second half of 2006, representatives of AlliedBarton met with representatives of NCLN20, including Stephen Jones and Sihaya Jones ("Individual

Defendants"). During these discussions AlliedBarton informed NCLN20 and the Individual Defendants that AlliedBarton desired to pursue business providing security services for agencies of the United States Federal Government. AlliedBarton informed NCLN20 and the Individual Defendants that AlliedBarton did not then have any contracts to provide security services to any federal agencies at a meaningful level and that AlliedBarton viewed the prospect of a joint project with NCLN20 as a stepping stone into a lucrative business. NCLN20 has a long history of bidding for, being awarded, and executing Federal contracts by which NCLN20, along with subcontractors such as AlliedBarton, provided security services.

9. Based on these, and other discussions in this time frame, AlliedBarton and NCLN20 agreed that they would jointly prepare a bid for a contract with the United States Department of Homeland Security ("DHS") to provide armed guard services at various federally-owned and leased properties throughout the State of Arizona (the "Arizona Project"). Based on NCLN20's ability to qualify as a "minority" bidder, the parties agreed that NCLN20 would be the primary bidder. Although the parties decided that AlliedBarton would technically work as a subcontractor with and for NCLN20 should the Arizona Project be awarded to them, the parties agreed that the actual division of responsibilities and revenues would be almost equal (fifty-one percent for NCLN20, and forty-nine percent for AlliedBarton).

10. On or about January 11, 2007, the parties entered into a "Teaming Agreement." Pursuant to the Teaming Agreement, the parties agreed to jointly prepare a bid for the Arizona Project ("Bid"). The Arizona Project's total contract value was anticipated to be at least $27,000,000.00. In part, the Teaming Agreement provides, in Article 3.4, that if the DHS awards a contract to NCLN20 for the Arizona Project consistent with the Bid, then NCLN20 "will issue" a subcontract to AlliedBarton. NCLN20 and AlliedBarton agreed that any such subcontract would obligate and entitle AlliedBarton to provide forty-nine percent of the services

3

required for the Arizona Project, and that AlliedBarton would receive an equivalent amount of revenues and profits.

11.   Thereafter, in reliance on the Teaming Agreement, and the assurances by the Individual Defendants, AlliedBarton expended considerable revenues in preparing, in concert with NCLN20, the Bid for the Arizona Project.

12.   In or about February, 2007 the DHS announced that it had awarded the project to NCLN20. This award was in an amount, form and substance such that the award matched the parties' Bid and therefore triggered NCLN20's obligations under Article 3.4 of the Teaming Agreement to issue the required subcontract to AlliedBarton.

13.   Shortly thereafter, AlliedBarton and NCLN20 commenced actual performance on the Arizona Project. AlliedBarton trained guards to work on the Arizona Project and engaged in other activities designed to transition the Arizona Project from the incumbent vender to NCLN20 and to AlliedBarton.

14.   In or about March 9, 2007, a third party provider of security services, Paragon Systems, Inc. ("Paragon"), filed a protest against the DHS's award of the Arizona Project to NCLN20. Paragon lodged a further protest on June 4, 2007. Paragon apparently claimed in this protest that, during the original bid process, NCLN20 had allegedly acted in a manner which Paragon believed was inappropriate. Paragon apparently claimed in the protest that it somehow learned about this supposedly inappropriate behavior by NCLN20 from AlliedBarton. However, AlliedBarton was not the source of whatever purported information about NCLN20 Paragon included in its protest. In these protests Paragon also apparently made other complaints about the award of the Arizona Project to NCLN20.

15.   The Arizona Project was placed on hold while the Government Accounting Office ("GAO") considered Paragon's protest. Although the Government's investigation is confidential, it apparently concluded that Paragon's

protest(s) were unfounded insofar as, on or about September 10, 2007, the DHS awarded the Arizona Project to NCLN20.

16. On or about September 10, 2007, to AlliedBarton's surprise, NCLN20's President, Mr. Jones, wrote a letter to AlliedBarton in which he stated that NCLN20 would be accepting the award of the Arizona Project, but that NCLN20 would not issue a subcontract to AlliedBarton. Mr. Jones claimed in this letter that NCLN20 had decided not to issue a subcontract because NCLN20 understood that Paragon had supposedly identified AlliedBarton as the source of Paragon's purported information that NCLN20 had somehow acted inappropriately during the bid process for the Arizona Project. Even if AlliedBarton had been the source of Paragon's protest information, which it was not, such conduct by AlliedBarton would not, could not, and did not amount to a material breach of the Teaming Agreement.

17. NCLN20 subsequently effectively admitted, however, that NCLN20's claim about the Paragon protest was a subterfuge and that the real reason it refused to honor its contractual obligation under the Teaming Agreement to issue a subcontract to AlliedBarton was that NCLN20 needed and desired to take for itself the entire Arizona Project and all of its revenues and profits.

18. NCLN20 has now commenced work on the Arizona Project and refuses to issue a subcontract to AlliedBarton.

## COUNT ONE
## BREACH OF CONTRACT
## (AGAINST NCLN20)

19. AlliedBarton incorporates the allegations of paragraphs 1 through 18 of the Complaint as though set forth in full herein.

20. NCLN20 and AlliedBarton are parties to a contractual relationship.

21. By virtue of the acts alleged above, AlliedBarton alleges that NCLN20 breached the contractual relationship between the parties, and in particular the

Teaming Agreement, when it, among other things, refused to issue a subcontract to AlliedBarton and took over the Arizona Project for NCLN20's own benefit.

22. AlliedBarton has performed all material obligations under the contractual relationship between the parties, except those which have been excused, prevented or extinguished.

23. AlliedBarton has been damaged by NCLN20's breaches of contract in an amount to be proven at trial, but in no event less than $1,000,000.00.

## COUNT TWO
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## (AGAINST NCLN20)

24. AlliedBarton incorporates the allegations of paragraphs 1 through 23 of the Complaint as though set forth in full herein.

25. The contractual relationship identified above contained an implied covenant of good faith and fair dealing which obligated NCLN20 to act in good faith in connection with its dealings with AlliedBarton.

26. By virtue of the acts alleged above, NCLN20 breached this implied covenant of good faith and fair dealing.

27. AlliedBarton has been damaged by NCLN20's breaches of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

## COUNT THREE
## FRAUD
## (AGAINST ALL DEFENDANTS)

28. AlliedBarton incorporates the allegations of paragraphs 1 through 27 of the Complaint as though set forth in full herein.

29. AlliedBarton is informed and believes, and on that basis alleges that in or about late 2006, NCLN20, the Individual Defendants, and each of them, represented to AlliedBarton, among other things, that their actions during, after and

in support of the bid for the Arizona Project would be consistent with the parties' plan that NCLN20 and AlliedBarton would jointly operate the Arizona Project, and, that NCLN20 would act for the benefit of AlliedBarton.

30. AlliedBarton is informed and believes, and on that basis alleges that, at the time the Individual Defendants and NCLN20, and each of them, made such representations to AlliedBarton, they were untrue.

31. AlliedBarton reasonably relied on Defendants', and each of their, representations.

32. As alleged above, Defendants failed to act in a manner consistent with their representations, but in fact acted for their own benefit, and to the detriment of AlliedBarton.

33. As a consequence of Defendants', and each of their, fraudulent conduct, AlliedBarton has been damaged in an amount to be proven at trial.

34. Defendants', and each of their, conduct as alleged herein, was oppressive, malicious, fraudulent, and despicable in that they acted with the intent to cause injury and damage to AlliedBarton and in fact have caused injury and damage to AlliedBarton. Defendants, and each of them, should therefore be liable for an award of punitive damages pursuant to section 3294 of the California Civil Code.

35. Defendants are either individually liable under Court Three or are liable because they entered into and participated in a conspiracy to defraud AlliedBarton, or both.

## COUNT FOUR
## DECLARATORY RELIEF
### (AGAINST NCLN20)

36. AlliedBarton incorporates the allegations of paragraphs 1 through 35 of the Complaint as though set forth in full herein.

37. An actual controversy has arisen and now exists between AlliedBarton and NCLN20 concerning the enforceability of the parties' contractual relationship,

and specifically the Teaming Agreement, and/or the respective rights of the parties under the Teaming Agreement. AlliedBarton contends that, among other things, the Teaming Agreement is specifically enforceable and that it requires NCLN20 to issue a subcontract to AlliedBarton for the Arizona Project. Defendant NCLN20 disputes this contention and contends that (somehow) it is not obligated to issue such a subcontract to AlliedBarton.

38. AlliedBarton desires a judicial determination of its rights and duties and a declaration on at least the following matters:

    a. That the Teaming Agreement is fully enforceable;

    b. That AlliedBarton is not in breach of the Teaming Agreement;

    c. That even if AlliedBarton was the source of the information to Paragon as alleged above, such conduct did not amount to a material breach of the Teaming Agreement or otherwise provide any basis for NCLN20 to refuse to issue a subcontract to AlliedBarton;

    d. That, in addition to being liable for all monetary damages which NCLN20 has already caused AlliedBarton, NCLN20 must issue a subcontract to AlliedBarton in a form and substance such that AlliedBarton can and may operate forty-nine percent of the Arizona Project and collect equivalent revenues and profits.

39. A judicial declaration is necessary and appropriate at this time under the circumstances in order that AlliedBarton may ascertain its rights and duties under the Teaming Agreement and proceed to work on the Arizona Project under a subcontractor agreement with NCLN20. Absent a judicial declaration, AlliedBarton will continue to incur substantial monetary, and other losses in connection with the disputes that have arisen with Defendants.

40. AlliedBarton is, and will continue to suffer imminent irreparable losses which are not compensable by money insofar as, among other things, NCLN20's misconduct has deprived, and continues to deprive AlliedBarton of the opportunity to

perform work for the DHS and thereby utilize that experience to obtain future additional work. Accordingly, AlliedBarton is entitled to, and should be awarded temporary, preliminary and/or permanent injunctive relief.

## COUNT FIVE
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS)

41. AlliedBarton incorporates the allegations of paragraphs 1 through 40 of the Complaint as though set forth in full herein.

42. By virtue of the conduct of Defendants, and each of them, as alleged above, Defendants, and each of them will receive benefits from the Arizona Project. Defendants intend to retain all such benefits for themselves.

43. For the reasons alleged above, Defendants, and each of them, retention of benefits from the Arizona Project will unjustly deprive Plaintiff of benefits which rightly belong to AlliedBarton.

## PRAYER FOR RELIEF

WHEREFORE, AlliedBarton demands judgment as follows:

### ON COUNTS ONE, TWO, THREE AND FIVE

1. That a constructive trust be imposed upon all monetary gains, profits, or funds obtained by Defendants, or any of the, as a consequence or result of their unlawful activity.

### ON COUNT FOUR

2. For a Declaration regarding the matters set forth in paragraph 38.

### ON COUNT THREE

3. For punitive and/or exemplary damages in an amount sufficient to punish Defendants, and each of them.

### ON ALL COUNTS

4. For compensatory and/or consequential damages in an amount to be proven at trial;

5. For the recovery of reasonable costs;

6. For equitable relief as appropriate including, without limitation temporary, preliminary and/or permanent injunctive relief; and

7. That AlliedBarton have such other and further relief as the Court deems just and proper.

Dated: October 10, 2007

KATTEN MUCHIN ROSENMAN LLP
Alan D. Croll
Jeremy J. F. Gray

By: *[signature]*
Alan D. Croll
Attorneys for Plaintiff ALLIEDBARTON SECURITY SERVICES LLC

10

COMPLAINT

31397897v1

## DEMAND FOR JURY TRIAL

AlliedBarton hereby demands a trial by jury.

Dated: October 10, 2007

                                      KATTEN MUCHIN ROSENMAN LLP
                                      Alan D. Croll
                                      Jeremy J.F. Gray

                                      By: /s/ Alan D. Croll
                                              Alan D. Croll
                                      Attorneys for Plaintiff ALLIEDBARTON
                                      SECURITY SERVICES LLC

COMPLAINT

31397897v1